UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x

REYNALDO MORALES,

                         Petitioner,                09 Civ. 5080(LAP)

          - against -                               <u>MEMORANDUM AND ORDER</u>

UNITED STATES OF AMERICA,

                         Respondent.

-----------------------------------x

LORETTA A. PRESKA, Chief United States District Judge.

     On May 29, 2009, Reynaldo Morales, through his attorney,
Henry E. Mazurek, Esq., filed a motion before Judge Carter[1] to
vacate, set aside, or correct his sentence pursuant to 28 U.S.C.
§ 2255 (hereinafter referred to as the "Petition").  The Petition
raised two main arguments:

          (1) that under <u>Apprendi v. New Jersey</u>, 530 U.S. 466,
          120 S.Ct. 2348 (2000) and <u>Blakely v. Washington</u>, 542
          U.S. 296, 124 S.Ct. 2531 (2004), the decision about
          whether he should have been prosecuted as an adult
          under the Juvenile Delinquency Act ("JDA"), 18 U.S.C.
          § 5031 *et seq.*, should have been made by a jury; and

          (2) his prior attorney rendered ineffective assistance
          of counsel at his adult transfer hearing.

(See Morales's 5/29/09 Memorandum of Law in Support of his
Petition ("Pet. Memo.") at 15-25.)  For the reasons discussed
below, Morales's Petition is denied in its entirety.

<u>BACKGROUND</u>

     From 1994 through September 1999, when Morales was between
the ages of 15 and 20 years old, he was an active member in a
criminal enterprise known as the "165th Street Organization."
Members of the 165th Street Organization were engaged in
interstate narcotics trafficking and other violent acts.  <u>United</u>

---

        [1]     This case was reassigned to me on July 16, 2010.

States v. Doe, 113 F.Supp.2d 604, 605 (S.D.N.Y. Sept. 14, 2000) (Carter, J.), aff'd United States v. Ramirez, 297 F.3d 185 (2d Cir. 2002).

On March 15, 2000, the Government filed a juvenile information against Morales and charged him with various acts of juvenile delinquency that occurred between 1994 and September 15, 1999. In particular, he was charged with participating in (a) the March 15, 1995 armed robbery, kidnapping and murder of Francisco Soto, and (b) a May 22, 1996 armed robbery. United States v. Doe, 113 F.Supp.2d at 604-05.

On April 19, 2000, the Government moved to prosecute Morales as an adult under the discretionary transfer provisions of the JDA. Id. at 605. Plaintiff's attorney at that time, Larry H. Krantz, Esq., filed opposition papers. See 4/13/10 Hernandez Decl. Exh. B. On August 10 and 14, 2000, Judge Carter held a hearing to determine whether transfer was warranted. The only witness who testified was Dr. Barry Rosenfeld, a forensic psychologist who examined Morales on the Government's behalf.[2] United States v. Doe, 113 F.Supp.2d at 605. After the hearing, the parties submitted additional papers on the transfer issue. See 4/13/10 Hernandez Decl. Exhs. A, C, and D.

On September 14, 2000, Judge Carter issued a written decision granting the Government's motion to transfer Morales from juvenile status to adult status. The decision said, in part:

> The following factors weigh against the transfer of John Doe to adult status: his social background, his present intellectual development and the availability of programs designed to treat his behavioral problems. John Doe has clearly had a troubled and impoverished childhood, punctuated by his parents' drug use and early deaths. The loss of his relationship with his father, and the ensuing strains on his mother, undoubtedly contributed to his drift into criminal behavior. Defendant's low IQ score also disfavors his prosecution as an adult.

> *     *     *

> The court finds the following factors to be

---

[2]     A copy of Dr. Rosenfeld's report is located in the 5/29/09 Mazurek Aff. at Exh. C, pages A-132 to A-138.

neutral: defendant's age at the time of the crimes charged in the information and his psychological maturity.  Defendant's alleged commission of the offenses in the information when he was as young as fifteen, and as old as eighteen, years of age neither favors nor disfavors transfer.

As to defendant's psychological maturity, the court initially notes its surprise that defense counsel failed to submit any report or testimony from the psychologist it was authorized to hire and have examine defendant.  This omission tends to bolster Dr. Rosenfeld's report inasmuch as it suggests that his opinions were not contradicted by defendant's expert.

Nonetheless, the court finds Dr. Rosenfeld's diagnoses as too provisional and too reliant on questionable assumptions to be persuasive....

Ultimately, the most persuasive evidence supporting Dr. Rosenfeld's diagnosis of ASPD, as well as his opinion that defendant was unlikely to benefit from rehabilitation, was defendant's prior parole violation.  By itself, it strongly suggests a likelihood that defendant will benefit little from further rehabilitative efforts.  However, the court is already obliged to consider defendant's parole violation under other factors.  Moreover, it alone - or even in conjunction with other evidence - does not compel the conclusion that plaintiff is psychopathic.

In spite of the foregoing, the court concludes that transfer of John Doe to adult status is warranted in the interest of justice.  In carefully weighing the factors, the court is particularly concerned about the seriousness of the crimes alleged, defendant's recidivist behavior and his current age.[3]  Defendant is charged with a host of serious crimes, including murder and other acts of violence, that arise out of his

---

[3]    Morales was fifteen years old at the time of Soto's murder, and seventeen years old when he was arrested for the 1996 armed robbery.  He was twenty years old when the Government filed the information against him, and twenty-one years old when Judge Carter ordered the transfer to adult status.  United States v. Ramirez, 297 F.3d at 193-94.

alleged involvement with a criminal organization.  The disturbing nature of these crimes; defendant's continued involvement in them even after his parole from state prison; his prior conviction for criminal possession of a loaded gun; and his arrest for armed robbery in 1993, heighten the court's concern about the threat he poses to society.  See Nelson I, 68 F.3d at 590 ("[W]hen a crime is particularly serious, the district court is justified in weighing this factor more heavily than the other statutory factors.").

Of equally grave concern to the court is defendant's demonstrated tendency to revert to criminal behavior.  Defendant had already been given at least one opportunity to straighten his life out when he was paroled, yet he apparently continued to engage in narcotics trafficking and other crimes.  Although the court recognizes that while on parole defendant was not provided with the resources, supervision and guidance necessary for him to fully benefit from rehabilitation, it cannot disregard his lack of motivation to change and his confessed inability to cope with the commonplace pressures of school and work.  Defendant's parole violation is particularly troubling given the financial and parental responsibilities he shares for raising his young daughter but which he largely abdicated upon his return to prison.  Inasmuch as rehabilitation is a primary purpose of the federal delinquency provisions, including 18 U.S.C. § 5032, and the government has demonstrated by a preponderance of the evidence that rehabilitation is not likely in this case, the court finds that transfer of John Doe to adult status is warranted.

United States v. Doe, 113 F.Supp.2d at 609-10.

On September 21, 2000, Mr. Krantz filed an interlocutory appeal on Morales's behalf, contesting Judge Carter's order transferring Morales from juvenile to adult status.  On July 30, 2002, the Second Circuit affirmed Judge Carter's findings. United States v. Ramirez, 297 F.3d 185 (2d Cir. 2002).

At a September 26, 2002 conference, Judge Carter granted Morales's request for a new lawyer, and Mr. Mazurek was appointed.  See 9/26/02 transcript.

On May 16, 2003, Mr. Mazurek and the Government's attorneys reached an agreement on a plea bargain.  See 4/13/10 Hernandez

-4-

Decl. Exh. E.  As part of the plea agreement, Morales agreed not
to file a direct appeal or litigate any sentence under 28 U.S.C.
§ 2255 and/or § 2241 that was at or below the Stipulated Sentence
of twenty years.  The Government then filed a superseding
Information.  See 5/29/09 Mazurek Aff., Exh. C at A-9 to A-12.
Count One of the Information charged Morales with conspiracy to
commit murder in aid of racketeering in violation of 18 U.S.C. §
1959(a)(5), and Count Two charged him with attempting to commit
murder in violation of 18 U.S.C. § 1959(a)(5) and (2).  Id.

     That same day, Morales pled guilty before Magistrate Judge
Dolinger to the two Counts, each of which carried a maximum term
of ten years of imprisonment.  See 5/29/09 Mazurek Aff., Exh. C
at A-19 to A-34.  Judge Dolinger determined at the hearing that
there was a factual basis for the plea, and that Morales (a)
understood the nature of the charges he was pleading to, (b)
understood the waiver-of-appeal provision contained in the plea
agreement, and (c) voluntarily gave his plea.  Id.  On May 28,
2003, Judge Carter accepted the plea.  (See Docket Item # 258 in
the criminal case, 98 Cr. 438(PGG).)

     Prior to sentencing, Mr. Mazurek submitted memoranda to
support Morales's claim that he should be given concurrent
sentences of 10 years imprisonment due to his "cultural
assimilation" into street-gang culture at a young age and the
"extraordinary circumstances" of his pre-trial detention.  See
5/29/09 Mazurek Aff., Exh. C at A-35 to A-111.  Along with other
exhibits, the memoranda annexed a psychiatric evaluation
conducted by psychiatrist Dr. Alexander Sasha Bardey (Id. at A-62
to A-71), letters from Morales's family and friends (Id. at A-73
to A-76, A-89 to A-93), and certificates from various classes
Morales participated in during his pre-trial detention (Id. at A-
96 to A-111).  The Government opposed Morales's request for a
downward departure from the federal Sentencing Guidelines.  Id.
at A-112 to A-131.

     On July 11, 2005, Judge Carter sentenced Morales to 240
months imprisonment and three years supervised release, along
with a $50 fine and a $200 special assessment.  See 5/29/09
Mazurek Aff., Exh. C at A-157.  This sentence was in compliance
with the Stipulated Sentence contained in the Plea Agreement.

     Morales appealed his sentence.  In a summary order dated
November 6, 2007, the Second Circuit affirmed the sentence on the
ground that Morales had waived his right in the plea agreement to
appeal any sentence at or below twenty years' imprisonment.  See
5/29/09 Mazurek Aff., Exh. D.  On January 7, 2008, Morales filed
a petition for rehearing and rehearing en banc.  On March 3,

-5-

2008, the Second Circuit rejected his request.  See 5/29/09
Mazurek Aff., Exh. E.  He declined to appeal the decision to the
United States Supreme Court; hence his judgment of conviction
became final on May 31, 2008.

On May 29, 2009, Mr. Mazurek filed the Petition and his
attorney affirmation.[4]  On April 13, 2010, Assistant United
States Attorney Jason P. Hernandez served the Government's
opposition and his declaration.[5]  On May 7, 2010, Mr. Mazurek
filed a reply memorandum, and on May 25, 2010, Morales filed a
pro se supplemental brief.

DISCUSSION

As a threshold matter, I have determined that a testimonial
hearing is not necessary in this case.  See Chang v. United
States, 250 F.3d 79, 85-86 (2d Cir. 2001).  Instead, I will rely
on Morales's Petition, motion papers, and attorneys' affidavits,
and on the Government's opposition papers.

In his papers, Morales makes two arguments to support his
§ 2255 motion.  First, he argues that Judge Carter did not have
the authority to transfer him to adult status because Apprendi
and Blakely held that, "any [disputed] fact that increases the
penalty for a crime beyond the prescribed statutory maximum must
be submitted to a jury, and proved beyond a reasonable doubt.
Pet. Memo. p. 18, citing Apprendi v. New Jersey, 530 U.S. 466,
490, 120 S.Ct. 2348, 2362-63 (2000) and Blakely v. Washington,
542 U.S. 296, 303, 124 S.Ct. 2531, 2537 (2004).  He alleges that
the change in status violated his due process rights because
there was a big discrepancy between the maximum penalty he could
receive as a juvenile (i.e., probation or "official detention" of
five years) and the maximum penalty he could receive as an adult
(i.e., life imprisonment).  By pleading guilty after his transfer

---

[4]     The entry for Docket # 8 on the docket sheet says that
Morales filed a motion to amend his Petition.  That is incorrect;
a review of the actual document shows that the motion was made by
Luis Ramirez for his § 2255 appeal before Judge Scheindlin in 07
Civ. 459.  **I hereby direct the Clerk's Office to remove Docket
# 8 from the 09 Civ. 5080 docket sheet and to bring the motion to
Judge Scheindlin's attention before it is entered on the 07 Civ.
459 docket sheet.**

[5]     The Government's papers have not been docketed.  **I
hereby direct the United States Attorney's Office to file its
opposition papers on the ECF system under 09 Civ. 5080.**

to adult status, he was subject to two maximum prison terms of ten years each.  Pet. Memo. pp. 18-19.  Second, he argues that he was denied effective assistance of counsel at his adult transfer hearing.

The Government opposes Morales's arguments for the following reasons.  First, it claims that under the terms of the May 16, 2003 plea bargain agreement, Morales knowingly and voluntarily waived his rights to file a direct appeal and/or litigate under 28 U.S.C. § 2255, any sentence that was at or below the Stipulated Sentence of twenty years.  Second, it claims that Apprendi does not apply to juvenile transfer proceedings.  Third, it claims that Morales's prior counsel was not ineffective.

1.   General Applicable Law

As a general rule, "relief is available under [28 U.S.C.] § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Napoli v. United States, 32 F.3d 31, 35 (2d Cir. 1994) (internal quotations and citations omitted).

2.   Morales Waived His Right to Appeal
     and/or Collaterally Attack His Sentence

The Second Circuit has held:

> It is well settled in this Court that "a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable." United States v. Djelevic, 161 F.3d 104, 106 (2d Cir. 1998).  This Court has also held that, "[i]n no circumstances ... may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of the sentence conforming to the agreement.  United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993); see also United States v. Morgan, 406 F.3d 135, 137-38 (2d Cir. 2005).

United States v. Moore, 306 Fed.Appx. 628, 629 (2d Cir. 2009). See also United States v. Ramirez, 42 Fed.Appx. 505, 507, 2002 WL 1758385, at * 2 (2d Cir. 2002) (finding that Morales's co-defendant knowingly and voluntarily waived his right to appeal his sentence).

In the case at bar, Apprendi had been decided almost three years before Morales entered his plea. Had he wished to challenge his change in status on Apprendi grounds, Morales could have (1) raised the issue during the transfer hearing, on direct review, or during his interlocutory appeal, or (2) negotiated a limited waiver in his Plea Agreement (see United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996) ("[A] defendant must reserve the right to appeal *at the time of the plea*.")). Instead, he acknowledged at the time he pled guilty that he knowingly and voluntarily agreed to waive his right to appeal his sentence and/or bring a § 2255 action. See 5/29/09 Mazurek Aff., Exh. C at A-24 to A-28, A-33 to A-34. For this reason alone, I find that Morales waived his Apprendi claim. However, Morales makes the argument that "the Apprendi challenge is jurisdictional and, thus, cannot be waived." Pet. Reply pp. 4-7; United States v. Calderon, 243 F.3d 587, 590 (2d Cir. 2001) (jurisdictional errors are not waived by a plea agreement because they affect the basic authority of a court to hear and decide a case); United States v. Ramirez, 297 F.3d at 192 (finding that Judge Carter properly exercised the Court's jurisdiction under the JDA in this case).

Accordingly, I will consider the Apprendi claim on the merits, although I note that subsequent changes to caselaw (i.e. Blakely and the other post-Apprendi cases cited by Morales) do not render an appellate waiver unenforceable:

> ... [W]e see no indication that the parties intended for the appeal waiver not to apply to issues arising after, as well as before, the waiver. See Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) ("We have long enforced waivers of direct appeal rights in plea agreements, even though the grounds for appeal arose after the plea agreement was entered into."); *cf.* Brady v. United States, 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ("[A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."). Morgan entered into his plea agreement after Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), but before Booker/Fanfan. Thus, there is every reason to assume that Morgan had knowledge of his Apprendi rights at the time he entered into the plea agreement. That Morgan did not, by contrast, have knowledge of his rights under Booker/Fanfan makes no material difference. His inability to foresee that

subsequently decided cases would create new appeal
issues does not supply a basis for failing to enforce
an appeal waiver.  On the contrary, the possibility of
a favorable change in the law after a plea is simply
one of the risks that accompanies pleas and plea
agreements.

United States v. Morgan, 406 F.3d 135, 137 (2d Cir. 2005).  See
also United States v. Lee, 523 F.3d 104, 107 (2d Cir. 2008).

     With respect to the ineffective assistance of counsel claim,
I find that Morales waived his right to bring the claim.  My
reasoning is discussed in more detail in Part 4 of this
Memorandum and Order.

3.   Apprendi Does Not Apply to Juvenile Transfer Proceedings

     Pursuant to 18 U.S.C. § 5032, a juvenile who committed a
violent felony before his fifteenth birthday can be transferred
to adult criminal prosecution only if the transfer is in the
interest of justice.  United States v. Nelson, 68 F.3d 583, 588
(2d Cir. 1995).  In order to make this determination, the
district court is required to consider six factors: (1) the
juvenile's age and social background; (2) the nature of the
alleged offense; (3) the nature and extent of the juveniles's
prior delinquency record; (4) intellectual development and
psychological maturity; (5) response to past treatment efforts;
and (6) availability of treatment programs.  Id.; United States
v. Doe # 3, 113 F.Supp.2d 604, 605 (S.D.N.Y. 2000) (Carter, J.).
Juvenile adjudication is presumed to be appropriate unless the
Government establishes, by a preponderance of the evidence, that
adult prosecution is warranted.  Id.  Evidence regarding the
juvenile's guilt or innocence is not presented at the hearing.

     More than one month after Apprendi was decided, Judge Carter
held the adult transfer hearing for the sole purpose of
determining whether Morales should be tried as an adult.  United
States v. Doe # 3, 113 F.Supp.2d at 605.  Specifically, he
determined that Morales's social background, present intellectual
development, and the availability of programs designed to treat
behavioral problems weighed against Morales's transfer to adult
status, and that Morales's age and psychological maturity were
neutral factors.  Id. at 609-10.  Nevertheless, he concluded that
adult status was warranted "in the interest of justice" because
he was "particularly concerned about the seriousness of the
crimes alleged, defendant's recidivist behavior and his current
age."  Id. at 610.  The decision was affirmed by the Court of
Appeals.  United States v. Ramirez, 297 F.3d at 194.

In <u>Apprendi</u>, the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. at 2362-63. <u>Blakely</u> clarified this rule by holding that the "statutory maximum" for <u>Apprendi</u> purposes is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." 542 U.S. at 303, 124 S.Ct. at 2537. Hence, Morales claims that under these rules, a jury should have determined if his transfer to adult status was warranted because he was exposed to a higher maximum sentence in the adult system. Neither the Court of Appeals nor any district court in our Circuit has ruled on this issue. After reviewing the cases cited by the parties and conducting my own research on the topic, I have concluded that Morales is not entitled to relief on this claim.

In <u>Oregon v. Ice</u>, __ U.S. __, 129 S.Ct. 711 (2009), the United States Supreme Court found that the principles announced in <u>Apprendi</u> and <u>Blakely</u> do not preclude a state from assigning to judges the discretion to impose consecutive rather than concurrent sentences:

> This case concerns the scope of the Sixth Amendment's jury-trial guarantee, as construed in <u>Apprendi</u> and <u>Blakely</u>. Those decisions are rooted in the historic jury function-determining whether the prosecution has proved each element of an offense beyond a reasonable doubt. ... Thus far, the Court has not extended the <u>Apprendi</u> and <u>Blakely</u> line of decisions beyond the offense-specific context that supplied the historic grounding for the decisions. The question here presented concerns a sentencing function in which the jury traditionally played no part....

<u>Ice</u>, __ U.S. __, 129 S.Ct. at 714 (internal citations omitted).

Historically speaking, the decision to transfer a juvenile to the adult system has not "traditionally been made by a jury." <u>Gonzalez v. Tafoya</u>, 515 F.3d 1097, 1115-16 (10th Cir. 2008). In <u>McKeiver v. Pennsylvania</u>, 403 U.S. 528, 91 S.Ct. 1976 (U.S. 1971), the United States Supreme court held that a "trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement" because, among other reasons, "[t]he imposition of the jury trial on the juvenile court system would not strengthen greatly, if at all, the fact-finding function, and would, contrarily, provide an attrition of the juvenile court's

-10-

assumed ability to function in a unique manner."  403 U.S. at
545-547, 91 S.Ct. at 1986-1987.  This decision has not been
overturned by <u>Apprendi</u> or any other subsequent case.  Indeed,
judges around the country continue to hold nonjury adult transfer
hearings.  <u>See United States v. Deandrade</u>, 633 F.Supp.2d 1, 4-5
(S.D.N.Y. Oct. 1, 2008) (Sand, J.) (discussing cases that have
held that the use of juries in juvenile courts is not
constitutionally required), <u>aff'd</u>, 600 F.3d 115 (2d Cir. 2010).

Morales relies on two decisions, one from the New Mexico
Court of Appeals, and one from the Massachusetts Supreme Court,
that take the minority view that <u>Apprendi</u> applies to adult
transfer hearings.  <u>See New Mexico v. Rudy B.</u>, 147 N.M. 45, 216
P.3d 810 (N.M. Ct. App. 2009), <u>cert. granted</u>, 147 N.M. 423, 224
P.3d 650 (N.M. 2009); <u>In Commonwealth v. Quincy Q.</u>, 434 Mass.
859, 753 N.E.2d 781 (2001), <u>overruled on other grounds by</u>
<u>Commonwealth v. King</u>, 445 Mass. 217, 834 N.E.2d 1175, 1201 n. 28
(2005).  However, the majority of courts[6] that considered this
issue have concluded otherwise --that <u>Apprendi</u> does not apply to
adult transfer hearings.  <u>See Gonzales v. Tafoya</u>, 515 F.3d 1097,
1116 (10th Cir. 2008), <u>cert. denied</u>, 129 S.Ct. 211 (2008); <u>Hegney</u>
<u>v. Vail</u>, 2008 WL 4766816, at *11 (W.D. Wash. Oct. 27, 2008),
<u>aff'd</u> 357 Fed. Appx. 1, 2009 WL 3303717 (9th Cir. Oct. 14,
2009); <u>United States v. Miguel</u>, 338 F.3d 995, 1004 (9th Cir.
2003); <u>Bucio v. Sutherland</u>, 674 F.Supp.2d 882, 901 (S.D. Ohio
2009).[7]

In <u>Gonzales v. Tafoya</u>, the Tenth Circuit discussed the
reasons why "the majority of courts" that considered the <u>Apprendi</u>
issue concluded that it does not apply to juvenile waiver
proceedings:

> First, ... a judge's decision that a juvenile
> should be prosecuted as an adult concerns the court's
> jurisdiction, and as a result, <u>Apprendi</u> does not apply.

---

[6]     My discussion will be limited to federal caselaw.  A
thorough summary of state court decisions rejecting the
application of <u>Apprendi</u> to juvenile transfer hearings is
contained in <u>Gonzales v. Tafoya</u>, 515 F.3d 1097 (10th Cir. 2008).

[7]     A majority of courts have also rejected the argument
that the use of non-jury juvenile adjudications to enhance a
sentence violates <u>Apprendi</u>.  <u>See United States v. Deandrade</u>, 633
F.Supp.2d 1, 3-5 (S.D.N.Y. 2008) (Sand, J.) (discussing cases),
<u>aff'd</u>, 600 F.3d 115 (2d Cir. 2010); <u>People v. Nguyen</u>, 46 Cal.4th
1007, 1021-25, 209 P.3d 946, 954-58, 95 Cal.Rptr.3d 615, 625-29
(Cal Sup. Ct. 2009) (discussing cases).

... It is only after a juvenile is transferred to the
adult system, ... that <u>Apprendi</u> requires the jury to
find beyond a reasonable doubt any facts increasing the
maximum sentence.

Second, some courts have relied upon the
differences between the juvenile and adult criminal
justice systems.  They reason that the Due Process
Clause requires "fundamental fairness" in juvenile
proceedings but that "fundamental fairness" "does not
guarantee juveniles every right criminal defendants
enjoy, such as the right to a jury trial." ...

Third, some courts have distinguished judicial
findings supporting the adult prosecution of a juvenile
from the findings traditionally made by juries.  For
example, in this case, the New Mexico Court of Appeals
reasoned that the amenability and commitment findings
at issue were not measures of the juvenile's criminal
culpability, were not findings of historical fact, and
required expertise that juries lacked (i.e., the
"foreknowledge of available facilities and the programs
in them").

515 F.3d at 1111-1112 (internal citations omitted).  The Tenth
Circuit then determined that, with respect to the New Mexico
juvenile system, the "distinction between the finding made at the
amenability hearing and findings traditionally made by juries is
a plausible one." <u>Id</u>. at 1113.[8]

In <u>Hegney v. Vail</u>, the Western District of Washington held
that <u>Apprendi</u> and <u>Blakely</u> do not apply to juvenile decline
hearings because neither guilt nor sentencing is at issue.

_____

[8]    It should be noted that after this decision was issued,
the New Mexico Court of Appeals overruled its prior <u>Gonzalez</u>
decision and determined that it could "no longer rely on its
underpinnings to support the holding that <u>Apprendi</u> does not apply
to amenability hearings" within the juvenile system.  <u>Mexico v.
Rudy B.</u>, 147 N.M. 45, 216 P.3d 810, 824 (N.M. App. 2009).
However, the New Mexico statutory system of handling juvenile
cases is unique.  Unlike the adult transfer hearings of other
jurisdictions, New Mexico's post-guilt-phase amenability hearings
are not jurisdictional.  <u>Id</u>. at 819.  A juvenile is first tried
in juvenile court, and then at an amenability hearing, the judge
hears additional facts to determine if an adult sentence is
warranted.  <u>Id</u>. at 815, 820.  On September 15, 2009, the New
Mexico Supreme Court granted certiorari to hear the <u>Rudy B.</u> case.

-12-

Rather, juvenile decline hearings determine only the court's
jurisdiction over the case.  2009 WL 4766816, at *10-11.  The
Ninth Circuit affirmed the decision, finding that, "[t]here is no
clearly established federal law creating a right to a jury and a
reasonable doubt standard in a juvenile decline proceeding."
Hegney v. Vail, 357 Fed. Appx. 1, 3, 2009 WL 3303717, at *1 (9th
Cir. Oct. 14, 2009).  See also United States v. Miguel, 338 F.3d
995, 1004 (9th Cir. 2003) (finding that a transfer proceeding
establishes the district court's jurisdiction over a defendant,
and that "Apprendi's caution that a jury must find any fact that
increases punishment beyond the statutory maximum, has no bearing
in transfer proceedings"); United States v. Juvenile, 451 F.3d
571, 576 n. 3 (9th Cir. 2006) (recognizing that a transfer to
adult status for criminal prosecution does not implicate
Apprendi), overturned on other grounds by United States v.
Juvenile Male, 245 Fed.Appx. 597, 600, 2007 WL 2255117, at * 2
(9th Cir. Aug. 7, 2007).

     In Bucio, the Southern District of Ohio determined that:

          The crucial point is that neither Apprendi nor
     Blakely speaks to the types of facts being found by the
     Ohio juvenile judges and the Apprendi's fact-finding
     language therefore does not clearly apply to the type
     of facts found by the Ohio juvenile judges here.
     Therefore, the Court cannot say that the state court's
     decision was contrary to these decisions nor that it
     was an unreasonable application thereof.  Whether the
     Court might have reached a different result or whether
     the state court's decision was incorrect are not
     relevant on a habeas petition.

674 F.Supp.2d at 901.

     Although silent on the Apprendi issue at bar, the Second
Circuit has held that a transfer hearing under the JDA is not "a
criminal proceeding designed to explore the defendant's guilt or
innocence."  United States v. Doe, 49 F.3d 859, 868 (2d Cir.
1995).  Judge Carter's rulings at Morales's adult transfer
hearing complied with the Doe rule.  He did not make any findings
regarding Morales's guilt or innocence.  Instead, he made only a
jurisdictional finding that Morales should be tried as an adult.
This type of finding does not trigger the need for a jury's fact
finding function.  Accordingly, Morales's Apprendi claim is
denied.

4.   <u>Morales's Former Attorney Rendered</u>
     <u>Effective Assistance of Counsel</u>

        Morales argues that his former attorney, Larry Krantz,
rendered ineffective assistance of counsel at his adult transfer
hearing.  Specifically, he claims that Mr. Krantz failed to:

        (1) adequately prepare for the hearing, discuss the
        nature of the proceeding with Morales, and discuss with
        Morales whether he or any of his witnesses should
        testify at the hearing;

        (2) prepare for the cross-examination of the
        Government's psychological expert by reviewing factual
        findings in the report with Morales or by consulting
        with an expert on Morales's behalf; and

        (3) make any presentation on behalf of Morales at the
        hearing.

<u>See</u> Pet. Memo. pp. 22-25.

        Morales's ineffective assistance of counsel claims are
barred by the terms of his plea agreement, which he knowingly and
voluntarily entered.  <u>United States v. Djelevic</u>, 161 F.3d 104,
107 (2d Cir. 1998) (per curiam) ("If we were to allow a claim of
ineffective assistance of counsel at sentencing as a means of
circumventing plain language in a waiver agreement, the waiver of
appeal provision would be rendered meaningless.").  Moreover,
because his claims are not related to the events that led to the
entry of his guilty plea, he cannot challenge the agreement's
waiver of appeal provision.  <u>United States v. Torres</u>, 129 F.3d
710, 715-16 (2d Cir. 1997).  In <u>Torres</u>, the Second Circuit held:

        ... A defendant who "pleads guilty unconditionally
        while represented by counsel may not assert independent
        claims relating to [the deprivation of constitutional
        rights that occurred] prior to the entry of the guilty
        plea." <u>United States v. Coffin</u>, 76 F.3d 494, 497 (2d
        Cir. 1996).  Rather, a defendant "may only attack the
        voluntary and intelligent character of the guilty plea
        by showing that the advice he received from counsel was
        not within [acceptable] standards ... " <u>Tollett v.</u>
        <u>Henderson</u>, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36
        L.Ed.2d 235 (1973).

129 F.3d at 715-16.

                            -14-

Morales's claims involve the legal assistance he received from Mr. Krantz at the adult transfer hearing, and not the legal assistance he received from Mr. Mazurek in connection with the plea.  In a similar case, the Court of Appeals held:

> Although Coffin complains of ineffective assistance of counsel, his specific complaints are directed only toward his original counsel.  He does not claim that his successor counsel, who represented him at the time of his plea, rendered ineffective assistance.  Nor does he claim that, were it not for his representation at the time of his plea, he "would not have pleaded guilty and would have insisted on going to trial."  Id.  His claims all relate to the legal assistance provided by his initial counsel prior to the guilty plea.  For the reasons discussed above, Coffin's guilty plea effectively waived all ineffective assistance claims relating to events prior to the guilty plea.

United States v. Coffin, 76 F.3d 494, 498 (2d Cir. 1996).  See also Dozier v. Walsh, No. 08 Civ. 4384(JGK), 2009 WL 1492217, at *4 (S.D.N.Y. May 28, 2009) (Koeltl, J.) ("The petitioner chose to plead guilty with the assistance of a new lawyer.  This guilty plea cures all non-jurisdictional defects.").  Accordingly, Morales's ineffective assistance of counsel claims are barred because they do not relate in any way to the voluntariness of the plea.[9]

In any event, Morales's claims fail on the merits because Mr. Krantz rendered effective legal assistance.  To prevail on an ineffective assistance of counsel claim, a defendant must show that (1) "'counsel's representation fell below an objective standard of reasonableness,'" and (2) "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Forbes v. United States, 574 F.3d 101, 106 (2d Cir. 2009) (quoting Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984)).

On October 29, 2009 and April 12, 2010, Judge Carter ordered

---

[9]     To the extent that Morales believes that Mr. Krantz rendered ineffective assistance of counsel for failing to raise the Apprendi argument during either the adult transfer hearing or the interlocutory appeal, that claim is also waived.  See United States v. Torres, 129 F.3d 710, 715-16 (2d Cir. 1997); United States v. Coffin, 76 F.3d 494, 498 (2d Cir. 1996).

-15-

Mr. Krantz to submit an *in camera, ex parte* affidavit.  I have
reviewed Mr. Krantz's April 26, 2010 affidavit, which addresses
the three ineffective assistance of counsel claims raised by
Morales, as well as his strategical reasons for acting the way he
did.  I have also reviewed the attachments to the affidavit,
including the July 2000 psychological evaluation of Morales that
was prepared by psychologist Ife A. Landsmark and the motion
papers Mr. Krantz submitted on behalf of Morales (see 4/13/10
Hernandez Decl. Exhs. B and C).  Based on this review, I find Mr.
Krantz to be credible.

Morales has failed to satisfy either prong of the <u>Strickland</u>
test.  It is clear from reading Mr. Krantz's affidavit and motion
papers, along with Dr. Landsmark's evaluation, that Mr. Krantz
provided Morales with effective assistance of counsel at his
adult transfer hearing.  For example, in his affidavit, Mr.
Krantz states:

> 8. ... I did advise Mr. Morales of his right to testify
> at the hearing.  I also advised him that I thought it
> would be unwise to do so, because he would have had to
> testify about the underlying facts of the offenses
> alleged, including allegations that he participated in
> a kidnaping, a robbery and a gruesome murder.  As I
> explained to him at the time, while that testimony
> would not be admissible against him in a later
> proceeding, I did not believe this testimony would
> paint him in a positive light or assist us in opposing
> the transfer motion.  This was particularly problematic
> because Mr. Morales at that time denied his
> participation in the charged offenses, and I feared
> that his exculpatory testimony would not be believed
> and would harm our chances of success.  (Indeed, based
> on Mr. Morales's subsequent plea of guilty, his
> exculpatory testimony at that hearing would have been
> perjurious.)

> 9. I also explained to Mr. Morales that I believed that
> the government's psychological report contained many
> favorable facts, and that, in my opinion, our best
> strategy at the hearing was to emphasize those positive
> facts and to argue that the government had failed to
> meet its burden of proof on the issue of transfer. ...
> Mr. Morales did not oppose this strategy and expressed
> no desire to testify at the hearing.

> 10. **Second**, the reason that I did not call our own
> psychological expert to testify at the hearing, as I

-16-

explained to Mr. Morales at the time, was that the
expert I consulted, Dr. Ife Landsmark, examined Mr.
Morales and rendered a report that was far less
favorable than the government's own report. ...  I note
the conclusion reached by Dr. Landsmark was as follows:
"[Morales] presents with conduct disordered behaviors
beginning in early adolescence and antisocial
tendencies in later adolescence.  This finding is most
consistent with a diagnosis of antisocial personality
disorder.  Based on the evaluation, Reynaldo Morales
does not appear to be a good candidate of
rehabilitative services geared toward juvenile
delinquency." ... I did not believe that calling Dr.
Landsmark to provide testimony to this effect would be
helpful at the hearing, and I explained this to Mr.
Morales.  He expressed no objection to this strategic
call.

* * *

12. **Third**, as to the question of calling other
witnesses, I do not have a specific recollection of
discussing this issue with Mr. Morales, although it
would have been my general practice to do so.  I can
also state that I was not aware of any witnesses whom I
felt would advance our cause at the hearing, and that
Mr. Morales never provided me with the names of any
possible witnesses who might assist him at the hearing.

13. **Finally**, in response to Mr. Mazurek's general
claims that I was unprepared for the hearing and
"fail[ed] to make any presentation for Mr. Morales at
the hearing," I note that I filed pre-hearing and post-
hearing submissions on Mr. Morales's behalf, and also
conducted an extensive cross-examination of Dr.
Rosenfeld. ...

4/26/10 Krantz Aff.  Morales did not prove that Mr. Krantz's
actions fell below a reasonable level of competence.
Accordingly, his motion must be denied.

<u>CONCLUSION</u>

For the reasons set forth above, Morales's motion to vacate,
set aside, or correct his sentence pursuant to 28 U.S.C. § 2255
is denied.  As Morales has not made a substantial showing of the
denial of a constitutional right, a certificate of appealability
will not issue.  <u>See</u> 28 U.S.C. § 2253(c)(2); <u>United States v.</u>

-17-

Perez, 129 F.3d 255, 259-60 (2d Cir. 1997).  The Court certifies
pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this
order would not be taken in good faith.  See Coppedge v. United
States, 369 U.S. 438, 444 (1962).

     SO ORDERED.

LORETTA A. PRESKA
Chief United States District Judge

Dated:     New York, New York
           August 31, 2010

Copies of this Memorandum and Order are being sent by electronic
filing to the attorneys of record.